IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| PATRICIA YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:12-cv-00050 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN COLVIN, ) | Magistrate Judge Brown |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Patricia Young's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 14), filed with a Memorandum in Support (Doc. No. 15). Defendant Commissioner of Social Security filed a Response. (Doc. No. 18.) Magistrate Judge Brown subsequently issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No. 19.) Plaintiff then filed Objections to the Report. (Doc. No. 20.) Defendant filed a Response to Plaintiff's Objections. (Doc. No. 21.) Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

I. BACKGROUND

*A. Factual Background*

The Court adopts the facts as stated in the Review of the Record in Magistrate Judge Brown's Report. (Doc. No. 19 at 2–11.)

## B. Procedural Background

On June 6, 2008, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). (Tr. 90, 94.)[1] In both applications, Plaintiff alleged disability with an onset date of March 16, 2004. (*Id.*) The Social Security Administration ("SSA") initially denied the applications on September 4, 2008 (Tr. 49), and again upon reconsideration on October 22, 2008 (Tr. 56, 58). Plaintiff filed a timely written request for hearing and on December 1, 2009, Plaintiff and Vocational Expert ("VE") Edward Smith appeared and testified at a hearing before Administrative Law Judge ("ALJ") Joan A. Lawrence. (Tr. 28–44.) On January 5, 2010, the ALJ determined that Plaintiff was not entitled to SSI or DIB. (Tr. 11–22.) Specifically, the ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since March 16, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*). . . .

3. The claimant has the following impairments, the combination of which is severe: coronary artery disease with history of acute inferior wall myocardial infarction, status post PCTA and stent placement to RCA, March 2004; history of syncopal episodes; hypertension; degenerative joint disease with diffuse arthralgias; chronic obstructive pulmonary disease with history of tobacco abuse; plantar fasciitis; and a sleep disorder, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)). . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *medium* work as

---

[1] An electronic copy of the Administrative Record docketed at Doc. No. 10.

defined in 20 CFR 404.1567(c) and 416.967(c) except that she can do more than occasional climbing of ladders, and is precluded from exposure to dust, fumes, chemicals, or noxious gases; and must avoid concentrated exposure to extreme temperatures and humidity. . . .

6. The claimant is capable of performing past relevant work as a Sewing Machine Operator, Mail Sorter, Server, or Line Worker in a factory setting. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). . . .

7. The claimant has not been under a disability, as defined in the Social Security Act from March 16, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 16–22 (emphasis omitted).)

Plaintiff filed a request for review of the hearing decision on January 15, 2010 (Tr. 9–10), and on May 10, 2012, the SSA Appeals Council entered an order denying Plaintiff's request (Tr. 1–3), thereby rendering the ALJ's decision the final decision of the Commissioner. Plaintiff filed this action on June 15, 2012, seeking judicial review of the ALJ's final decision under 42 U.S.C. §§ 405(g) and 1383(c). (Doc. No. 1.) Pursuant to Magistrate Judge Brown's August 28, 2012, order (Doc. No. 11), Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 14) with a Memorandum in Support (Doc. No. 15) on November 13, 2012. Defendant filed a Response on February 11, 2013. (Doc. No. 18.) On August 15, 2013, Magistrate Judge Brown issued the Report, recommending that Plaintiff's Motion be denied and the decision of the Commissioner be affirmed. (Doc. No. 19 at 23.)

On August 23, 2013, Plaintiff filed Objections to the Report, objecting to Magistrate Judge Brown's recommendation that the Court find the ALJ's decision was supported by substantial evidence. (Doc. 20 at 1.) Plaintiff claims the ALJ rejected the opinion of Dr. Samuel Ong, Plaintiff's cardiologist at the Cumberland Heart Clinic in Crossville from April 2004 to

March 2005, without considering that Dr. Ong was a specialist, or the length of the relationship he had with Plaintiff. (*Id.* at 2.) Additionally, Plaintiff claims the ALJ failed to consider the dosage, type, and side effects of the medications she was prescribed. (*Id.* at 2–3)

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d

4

328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff objects to the recommendation of Magistrate Judge Brown that the ALJ properly rejected the opinion of Plaintiff's treating physician. (Doc. No. 20 at 1.) In particular, Plaintiff claims the ALJ did not consider that Dr. Ong was a specialist and that he saw Plaintiff on multiple occasions. (*Id.* at 2.) Further, Plaintiff contends the ALJ failed to consider dosage, type, and amount of the medications she was prescribed in determining her residual functional capacity ("RFC"). (*Id.* at 2–3.) Defendant claims Plaintiff's objections must fail because Plaintiff does not dispute the Magistrate Judge's Report, but simply seeks to reargue the same claims she made unsuccessfully before the Magistrate Judge. (Doc. No. 21 at 1.) The Court evaluates Plaintiff's arguments in turn.

*A. The ALJ's Rejection of Dr. Ong's Opinion*

Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." Dr. Ong treated Plaintiff at the Cumberland Heart Clinic in Crossville, Tennessee, from April 2004 through March 2005. (Tr. 190–202.) The medical records show that Dr. Ong examined and observed Plaintiff on five occasions during that time period. (*Id.*) Accordingly, based on the regulations and the record in this case, Dr. Ong is properly classified as a treating medical source of Plaintiff.

5

The medical opinion of a treating physician should be given complete deference if it is not contradicted; otherwise, it deserves substantial deference. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1370 n.7 (6th Cir. 1991); *Shelman v. Heckler*, 821 F.2d 316, 320–21 (6th Cir. 1987). If the ALJ does not accord a treating physician's opinion controlling weight, then the ALJ must consider the following factors to determine what weight to assign: "'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

If the ALJ rejects the opinion of a treating physician, he must provide a basis for doing so. *Shelman*, 821 F.2d at 321. The Sixth Circuit has consistently held that the ALJ may properly reject the opinion of a treating physician where that opinion is not sufficiently supported by medical findings. *E.g. Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc);. For example, in *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004), the Sixth Circuit held that substantial evidence supported the rejection of a treating physician's opinion that a claimant could stand or walk for no more than two hours in an eight-hour day where there were contrary medical opinions in the record and there was no objective evidence of any impairment affecting the claimant's lower extremities. Thus, the Court must consider both medical evidence and vocational factors in assigning weight to a treating source's opinion and, absent adequate support in the record, the ALJ is not bound by a treating physician's statement that a claimant is "disabled." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir 1986); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir 1984).

Based upon review of the Report and the administrative record, the Court agrees with the Magistrate Judge's finding that the ALJ did not err in rejecting the results of Dr. Ong's cardiac RFC questionnaire of November 30, 2009 (Tr. 382–86), because it was not supported by other objective medical evidence in the record and was inconsistent with Dr. Ong's previous medical observations. In particular, the results contradicted the medical records obtained from Cumberland Medical Center ("CMC"), where Plaintiff was treated from March 16, 2004, to July 28, 2008 (Tr. 238–307), and Primary Care Associates ("PCA"), where Plaintiff was treated from January 11, 2006, to September 17, 2008 (Tr. 214–36, 321–66), as well as the results of a residual functional capacity ("RFC") examination performed by consultant physician Dr. Jerry Lee Surber on behalf of the Tennessee Disability Determination Services on August 20, 2008 (Tr. 308–11). Additionally, the Court finds the ALJ was justified in not according substantial weight to Dr. Ong's cardiac RFC questionnaire since Dr. Ong performed the RFC evaluation four years after he stopped treating Plaintiff, whose last visit with Dr. Ong was on March 22, 2005.

On the 2009 cardiac RFC questionnaire, Dr. Ong checked "chest pain" as one of Plaintiff's symptoms. (Tr. 382.) However, while Dr. Ong did note that Plaintiff was "+ for intermittent chest pain" at her first visit with him on April 7, 2004 (Tr. 198), by October 2004 Dr. Ong noted that Plaintiff reported "[l]ess chest pain" (Tr. 196) and in November 2004, she reported "[n]o chest pain" (Tr. 194). Plaintiff continued to report "[n]o chest pain" in February 2005 and "less frequent chest pain than before" at her last examination with Dr. Ong in March 2005. (Tr. 190, 192.) In addition, the more recent records from CMC and PCA do not contain any notes related to Plaintiff suffering from chest pain between 2006 and 2008. (Tr. 238–307,

321–66.) On August 23, 2008, Dr. Surber, in her RFC assessment, noted that Plaintiff denied having chest pain. (Tr. 310.)

In addition, Dr. Ong checked "fatigue," "shortness of breath," and "palpitations" on Plaintiff's cardiac RFC assessment. (Tr. 382.) However, Dr. Ong noted "no fatigue" in all office consultation reports except the report on April 7, 2004, where he noted "+ for fatigue." (Tr. 190–99.) While subsequently under the care of PCA, Plaintiff did not report fatigue during her last five months of treatment. (Tr. 321–25.) On August 23, 2008, Dr. Surber noted that Plaintiff had fatigue and stiffness on rainy and cold days. (Tr. 311.)

Dr. Ong also did not note Plaintiff having palpitations in any of her visits while under his treatment. (Tr. 190–99.) Neither Dr. Surber's RFC assessment, nor the records of CMC or PCA contain any notes about palpitations. (Tr. 238–307, 308–11, 321–66.) Likewise, Dr. Ong noted "no shortness of breath" on all office consultations, except on April 7, 2004. (Tr. 190–99.) The Court finds only one note regarding shortness of breath in the records provided by CMC and PCA, from a chest X-ray report from March 2004 in which Dr. Keith Kimbrell noted that Plaintiff had a clinical history of shortness of breath. (Tr. 238–307, 321–66.) However, in her RFC assessment Dr. Surber noted "shortness of breath on minimal exertion." (Tr. 310.)

Dr. Ong noted "sweatiness" and "weakness" as two of Plaintiff's symptoms in his cardiac RFC questionnaire. (Tr. 382.) However, Dr. Ong's previous treatment records do not contain any notes related to sweatiness or weakness. (Tr. 190–99.) The records provided by CMC and PCA similarly do not contain any notes to support Plaintiff's claims regarding these symptoms. (Tr. 238–307, 321–66.) Dr. Surber did not report sweatiness in the RFC assessment, but noted that Plaintiff "appeared slightly weaker when standing on her left compared to her right leg." (Tr. 310–11.)

In his RFC questionnaire, Dr. Ong indicated Plaintiff had "marked limitation of physical activity" demonstrated by fatigue, palpitation, dyspnea,[2] or anginal discomfort. (Tr. 382.) As discussed above, there is nothing in the record to support the conclusion that Plaintiff showed frequent symptoms of anginal discomfort, fatigue, or palpitation. As to dyspnea, Dr. Ong noted "+ for dyspnea on exertion" on February 17, March 22, and November 17, 2005. (Tr. 190–94.) However, Dr. Ong's treatment notes appear to be self-contradicting as he noted "no shortness of breath" in the same treatment note marked positive for dyspnea, even though dyspnea relates to difficult breathing. (Tr. 190–99.) Further, there is no record of any kind of dyspnea in Dr. Surber's exam (Tr. 310–11) or in the records from CMC or PCA (Tr. 238–307, 321–66).

Dr. Ong also noted in his RFC questionnaire that Plaintiff experienced depression and chronic anxiety because of her physical symptoms and limitations without providing any explanation for his opinion. (Tr. 383.) The Court finds no medical evidence in the record of Plaintiff suffering from depression. Under 42 U.S.C. § 423(d)(5), to find a claimant disabled, "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities." Thus, Dr. Ong's conclusions, which appear to rely on Plaintiff's subjective statements alone, do not provide adequate evidence for the Court to conclude that Plaintiff has depression. *See* 42 U.S.C. § 423(d)(5). When asked to give reasons why Plaintiff could not perform even low stress jobs, Dr. Ong reported that, according to Plaintiff, she experiences symptoms just talking. (Tr. 383.) Dr. Ong did not give any medical explanation for Plaintiff's inability to tolerate work stress other than repeating what

---

[2] Dyspnea is defined as "difficult or labored breathing." W.A. Newman Dorland & Douglas M. Anderson, *Dorland's Illustrated Medical Dictionary* 518 (28th ed. 1994).

Plaintiff told him. The Court also notes that, while Dr. Ong is a cardiac specialist there is no evidence in the record that he has any background in diagnosing or treating psychological disorders.

Though Plaintiff claims Dr. Ong's assessment is supported by other medical evidence in the record (Doc. No. 15 at 17), the Court finds the ALJ did not err in refusing to accord substantial deference to Dr. Ong's cardiac RFC questionnaire because it is inconsistent with the other medical records and Dr. Ong's own treatment notes as explained above. In her Memorandum in support of her Motion, Plaintiff provides a lengthy discussion on the legal standard for how much weight an ALJ should give to the opinions of treating physicians (*id.* at 13–17), yet she fails to provide the specific facts to support her claim that Dr. Ong's RFC questionnaire is consistent with other medical records. (*Id.* at 17–18). Accordingly, the Court finds there is substantial evidence in the record to support the ALJ's decision to not assign substantial weight to Dr. Ong's cardiac RFC questionnaire.

Additionally, the Court finds the ALJ provided sufficient justification for rejecting Dr. Ong's opinion. In her decision, the ALJ discussed Plaintiff's testimony about her work-related duties and difficulties she experienced at work, noting Plaintiff's history of an acute inferior wall myocardial infarction, and citing Dr. Ong's notes and Dr. Surber's clinical impressions. (Tr. 18–21.) The ALJ wrote that "Dr. Ong's assessments are incredibly over-restrictive in light of his own clinical findings as discussed above," referring to Dr. Ong's findings from Plaintiff's prior visits. (Tr. 20–21.) ALJ Lawrence discussed the inconsistencies between Plaintiff's alleged symptoms and her medical records throughout the decision. (Tr. 19–20.) Based on the factors the ALJ was required to consider—length of treatment relationship, frequency of examination, nature of treatment relationship, supportability of the opinion, consistency of the opinion with

the record, and specialization of the treating source—The Court is satisfied that ALJ Lawrence accurately assessed the amount of weight to give to Dr. Ong's medical assessment, and finds the ALJ's rejection of Dr. Ong's cardiac RFC questionnaire was supported by substantial evidence.

*B. The ALJ's Failure to Consider the Side Effects of Medication*

Plaintiff next claims the ALJ failed to consider the side effects of Plaintiff's medications in her determination of whether Plaintiff was disabled. (Doc. No. 20 at 2–3.) The Sixth Circuit has found that where medical records give no indication that a plaintiff reported side effects of medications to any physician, the ALJ does not err in finding the plaintiff suffered no adverse effects from the medications. *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (citing *Steiner v. Sec'y of Health & Human Servs.*, 859 F.2d 1228, 1231 (6th Cir. 1987)).

In this case, Plaintiff did not report to any of her physicians any severe side effects caused by her medications that would prevent her from working. In Plaintiff's Tennessee Department of Human Services pain questionnaire of July 14, 2008, when asked to describe any side effects caused by her medications, Plaintiff responded that sometimes Soma, one of her prescribed medications, made her sleepy. (Tr. 126.) In an SSA Disability Report, completed as part of her SSA application, Plaintiff responded "none" when asked to list side effects of medications she was taking. (Tr. 136.) On September 3, 2008, Joe G. Allison, M.D., a state agency physician, completed an RFC assessment of Plaintiff in which he noted that Plaintiff's medications made her sleepy. (Tr. 319.) The medical records provided by PAC Karen Sexton, a family nurse practitioner, noted on multiple occasions that Plaintiff takes high risk medications, but did not report Plaintiff experienced any side effects from the medications. (Tr. 322–46.) At the December 1, 2009, hearing before the ALJ, when asked whether she was experiencing any side effects of her medications, Plaintiff responded "[n]ot that I know of." (Tr. 34.)

11

The Court cannot find anywhere in the record either complaints from Plaintiff about side effects of her medications or medical evidence of Plaintiff suffering from side effects of her medications. However, even if such evidence was present, Plaintiff did not raise the argument that the ALJ failed to consider side effects of her medications in her Memorandum in Support of her Motion. (*See* Doc. No. 15 at 5–18.) Likewise, neither Defendant's Response, nor the Magistrate Judge's Report contained any notes about side effects of Plaintiff's medications. (*See* Doc. Nos. 18; 19.) Thus, for the additional reason that Plaintiff failed to raise this claim in her Motion for Judgment the Court finds her argument to be without merit. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (holding that absent compelling circumstances, "parties may not raise new arguments or issues at the district court stage that were not presented to the Magistrate Judge") (paraphrasing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). Accordingly, the Court finds Plaintiff's claim regarding the ALJ's failure to consider side effects of Plaintiff's medications is not reviewable.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report in its entirety. Plaintiff's Motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this the _25_ day of July, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT